Davis v. Buckham

*William M. Power*, for plaintiffs.
*Michael Minkin*, for defendant.

SATTERTHWAITE, J., March 26, 1975.—This action is in equity, seeking injunctive and other equitable relief and damages by remaining members of a partnership formed for the associated practice of physical therapy, against defendant, a withdrawing member of that partnership, who is alleged to have violated and to continue to violate a noncompetition clause of the partnership agreement by which defendant had agreed, upon withdrawal, not to engage in the practice of physical therapy within a radius of 15 miles of Doylestown for five years after such withdrawal.

Presently before the undersigned, as assigned judge under Bucks County Rule *266, are (1) plaintiffs' motion for sanctions pursuant to Pa. R.C.P. 4019 by reason of defendant's refusal to answer certain of the written interrogatories filed and directed to him by plaintiffs, and (2) defendant's counter-motion to the same and because of plaintiffs' objections to, and refusal to answer, certain of defendant's interrogatories to them. Consideration will first be given to plaintiffs' subjects of discovery.

Defendant has filed written answer to some of the 15 separate interrogatories (most of which were comprised of several parts or subquestions) but contends that those which he has refused to answer are not relevant or are privileged.

One of the crucial issues in the case is whether defendant has been practicing physical therapy at his home in Doylestown Township. Plaintiffs contend that he has been, alleging in their complaint, inter alia, that he corresponded with others on a professional letterhead and has filed United States income tax returns, both such types of writings listing 2252 Turk Road, Doylestown (his home) as an office address. Defendant's answer to the complaint denies these and other similar averments, and further denies that he has used, or is using, his home as an office for the practice of physical therapy.

Plaintiffs' fifth interrogatory relates to defendant's stationery and consists of four sub-parts. The first and second asked whether, and, if so. when, defendant had purchased "business stationery" since his termination of the partnership with plaintiffs. Defendant answered that on an unknown date he had purchased stationery which he characterized as "general purpose stationery and not necessarily classifiable as business stationery." Defendant refused to answer the third sub-part of this interrogatory, which was an inquiry as to the identity of the party from whom this purchase of stationery had been made, responding only with the words "Not relevant." The fourth sub-part inquired as to the "business address" which appeared on this stationery; defendant responded that no "business address" appeared on the stationery, his "home address" being "indicated" thereon.

Defendant's position of irrelevancy of the identity of the party furnishing the stationery must be overruled. One of the matters which might be taken into account as to some degree evidential in determining whether or not defendant had engaged in the practice of physical therapy at his home is whether or not his letterheads would permit the inference that he

held himself out to those with whom he corresponded as having a place of business for such practice at his home. It is conceivable that plaintiffs might wish to check the accuracy of his statement that his stationery did not contain a business address by going to the supplier himself rather than relying upon defendant's word, especially in view of the equivocal answers he did make to other parts of this interrogatory. The quantity of letterheads purchased and the time thereof might also be significant matters of inquiry of the supplier in this same connection. Defendant's contention of no possible relevancy cannot be sustained, and he should answer this question.

Plaintiffs' ninth, tenth and eleventh interrogatories all related to Federal income tax returns. In answer to question 9(a) and 9(b) defendant stated that he had filed an income tax return for the year 1972 and had listed his employment as a physical therapist. In answer to questions 9(c) and 9(d), inquiring as to whether or not a "Schedule C" (listing income from business or profession) had been attached to his 1972 return and requesting him to attach a copy of that return, as well as his reply to interrogatories 10 and 11, relating to such return for the year 1973 and requesting copies of returns for all years since 1969, respectively, defendant made the same reply: "This information is privileged and is irrelevant and immaterial to the present proceeding."

From defendant's brief, it is not clear whether he is still claiming privilege. In any event, if he is, such claim is hereby resolved against him. Little question would remain at this late date but that, notwithstanding the Internal Revenue Code interdiction against indiscriminate disclosure of citizens' returns to the public or other parties by the director, the taxpayer by himself bringing suit on a cause of action where

his earnings may be a subject of relevant inquiry, in effect, has waived such privilege: Brei v. Sharon Steel Corporation, 8 D. & C. 2d 483, 489-90 (1956), cited with approval in Kine v. Forman, 205 Pa. Superior Ct. 305 (1965). Accord: Fannasy v. Howard, 20 D. & C. 2d 234 (1959); Silverman v. Denny, 80 Montg. Co. L. Rep. 329 (1962); Gagliardi v. Tozzi, 44 D. & C. 2d 492 (1968). Further, in such circumstances, he can be required to obtain, or authorize his adversary to obtain, copies of such returns from the Internal Revenue Service if he professes to have retained no copies himself: McDonough v. Linton's Lunch, 10 D. & C. 2d 528 (1956).

Moreover, there is persuasive precedent for extending the requirement of producing income tax returns to a defendant (who, of course, has not himself voluntarily put his earnings in issue by bringing suit) in cases where they might be relevant in particular instances, as, for example, on cross-examination; they are not to be regarded as privileged, since the Internal Revenue Code provides that they do constitute public records and the general prohibition of the code against inspection thereof is riddled with many exceptions: Noonan v. McGuire (No. 2), 11 D. & C. 2d 543 (1956), wherein Judge Ellenbogen pertinently observed, at page 545:

"A return which is open to so many agencies and persons and may be made available upon order of the President, apparently in any instance which the President deems proper, can hardly be called 'confidential' and only in a very limited sense 'privileged'. If the Congress intended that income tax returns should be privileged or should have the status of confidential communications, similar to those between attorney and client, or [that] Federal or State courts should not, in proper cases, have the right to direct production of copies thereof, it could, and we assume

would, have so provided. Requests for the production of income tax returns have been made frequently over a number of years. Courts have directed the production of these records for some years, but Congress has not seen fit to prohibit the courts from doing so." Accord: Haverford Hall, Inc. v. Hamilton Arms, Inc., 34 D. & C. 2d 22 (1964). Defendant's tax returns are not privileged.

The Subject of relevancy of these tax returns, however, raises more difficult questions. Pa. R.C.P. 4007 authorizes discovery, subject to the limitations of Pa. R.C.P. 4011 (not argued here to be applicable beyond the possible contention of privilege just disposed of), as to any matter "which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case."

The date when defendant left the partnership does not appear in the pleadings. Defendant, in his brief, suggests the date of January 1, 1971. If this is correct, it is difficult to comprehend how defendant's tax returns for 1969 and 1970 have any conceivable relevancy, and defendant, accordingly, was within his rights in refusing to give any information relative thereto. Conversely, respecting his returns for years including or subsequent to the date of his withdrawal from the firm, possibly relevant to the central issue here would be, not the dollar amounts of defendant's earned income, but rather the geographic source of such income, as arguably indicated, for example, by his own designation to the government of his place or places of business. To this extent, therefore, plaintiffs would be entitled to discovery.

But the uncontrolled production of income tax returns for this limited purpose and scope would result in unseemly intrusion into defendant's private affairs

respecting the many other matters of information in such returns to which plaintiffs have not the slightest claim of relevancy. Accordingly, production of the returns generally will not be required; the order to produce will be limited to the appropriate schedule setting forth income from business or profession for the year 1971 and later years. Moreover, as did Judge Ellenbogen in Noonan, supra, such schedules shall be produced for inspection by the undersigned judge of this court, in camera, who will determine therefrom what, if any, of the information contained thereon is possibly relevant to the within action and make only such latter information available to counsel for plaintiffs.

The final matter of contested discovery herein further relates to defendant's correspondence "on professional stationery." The twelfth interrogatory consists of two parts: 12(a) asks whether defendant, since his withdrawal, has "corresponded with doctors on professional stationery," to which defendant has given the reply "Defendant has corresponded with doctors, but only on the stationery described in Defendant's answer to Paragraph 5." Sub-(b) of plaintiffs' interrogatory numbered 5 requests the dates and addressees of such letters and requires production of copies thereof. Defendant has responded "This information is confidential and is irrelevant and immaterial to the present proceeding."

The court does not understand defendants' claim of confidential privilege still to be pressed. In any event, unless such communications were by defendant with reference to himself as a patient, the court is aware of no privilege in the law attaching thereto. On the issue of relevancy, just as in the case of the letterheads and the tax returns, it is conceivable that the content of defendant's letters to the medical profession may be

arguably significant upon the question of whether defendant was practicing physical therapy within the interdicted limitations, as for example, by fixing appointments for patients at a particular time and location. Here, again, however, the correspondence in question may well contain much totally irrelevant matter and will be required to be produced to the undersigned judge for inspection, in camera, and only that which is conceivably relevant will be released to counsel for plaintiffs' examination.

The court now turns to defendant's interrogatories to the plaintiffs. Those numbered 2 and 4(a) inquire into financial matters of plaintiffs' partnership, both apparently for the same purpose according to defendant's brief. Question 4(a) would require plaintiffs to state the gross income of the partnership for each year from the year prior to defendant's separation to the present. Question 2 asks for a statement of moneys collected by plaintiffs since defendant left the partnership with respect to receivables "as a result of Defendant's work prior to his leaving."

Defendant contends that the financial position, income-wise, of the partnership after his withdrawal, as compared with that prior thereto, would be relevant on plaintiffs' claim of damages attributable to defendant's alleged practice of physical therapy within the proscribed time and geographic limits, and, further, that such evidence would be some indication of even the very fact or no-fact of such practice.

While the court fails to follow the latter facet of this argument, and while plaintiffs have not alleged as a part of their prayer for relief any claim of damages measured by loss of earnings of the partnership, nevertheless, it is at least arguable that their respective prayers for injunctive relief may involve a showing of irreparable damage. Accordingly, these inquiries can-

not be said to be inevitably and necessarily irrelevant. There is no merit to plaintiffs' objections that these questions violated Pa. R.C.P. 4011(a) or (b); there is no indication that the information was sought in bad faith or would cause unreasonable annoyance, embarrassment, expense or oppression to plaintiffs.

Defendant's seventh interrogatory inquires as to "[h]ow did plaintiffs obtain the information they alleged concerning defendant's registration and returns with the several state and federal agencies referred to in plaintiffs' complaint and interrogatories, including the Internal Revenue Service, U.S. Department of Health, Education and Welfare, and the Department of Health of the Commonwealth of Pennsylvania?" Plaintiffs object to this subject of discovery, contending that it calls for information secured in anticipation of litigation or preparation for trial and hence is exempt under Pa. R. C. P. 4011(d). The court believes this contention to be sound, sustains plaintiffs' objection to this question and will not require plaintiffs to disclose the information requested by defendant's seventh interrogatory.

Defendant's final interrogatory presently in question, that numbered 8, requested plaintiffs to define the phrase "practice of physical therapy". Plaintiffs object on the grounds that the question violates Pa. R.C.P. 4011(c) which protects matters which are privileged or would require disclosure of secret processes, development or research, and Pa. R. C. P. 4011(d) which excludes information secured in anticipation of litigation or preparation for trial. The court fails to understand how either of these objections has application. Certainly, no question of privilege is involved, nor can it be comprehended how the matter of defining the practice of physical therapy can be a secretive thing or a subject of information preparatory to ad-

versary litigation. Equally certain is the subject of relevancy: the court must inevitably be informed of what the practice of physical therapy consists before it may decide whether defendant has engaged therein. Plaintiffs must answer this question.

## ORDER

And now, March 26, 1975, for the reasons stated in the foregoing memorandum, it is hereby

Ordered and directed, as follows:

1. Defendant shall answer plaintiffs' interrogatory numbered 5(c) forthwith.

2. Defendant shall produce to the undersigned judge of this court true and correct copies of the schedules attached and filed as parts of his Federal income tax returns depicting his income from his business or profession for the years 1971 and subsequent years, with the understanding that the undersigned judge will examine the same and release to counsel for plaintiffs only those portions thereof which are conceivably relevant to the within cause of action, returning the balance, undisclosed, to defendant.

3. Defendant shall produce to the undersigned judge of this court true and correct copies in his possession of all letters from himself to medical or osteopathic doctors (other than those in which he himself was the patient) since the date of his withdrawal from the partnership, with the understanding that the undersigned judge will examine the same and release to counsel for plaintiffs only those portions thereof which are conceivably relevant to the within cause of action, returning the balance, undisclosed to defendant.

4. Plaintiffs shall answer defendant's interrogatories numbered 2, 4(a) and 8 forthwith. They shall not be required to answer that numbered 7.

5. Defendant and plaintiffs shall comply with the foregoing within 30 days. Upon such compliance, the within respective motions for sanctions shall be denied and refused. Upon failure of either party to comply, the within motion of the other for sanctions shall be reinstated upon application, with notice to the party allegedly failing to comply, and such further proceedings and orders shall be made thereon as may then appear to be appropriate.